[Doc. No. 14]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| BESSIE TURNER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 11-3356 (JS) |
| | : | |
| PROFESSIONAL RECOVERY | : | |
| SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**MEMORANDUM OPINION**

This matter is before the Court on the "Motion for Summary Judgment" [Doc. No. 14] filed by defendant Professional Recovery Services, Inc. ("PRS"). The Court received plaintiff's response [Doc. No. 28] and defendant's reply [Doc. No. 29]. The Court exercises its discretion to decide defendant's motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, defendant's motion is GRANTED in part and DENIED in part.

I. Background

Plaintiff's personal debt from an HSBC credit card was referred to PRS, a debt collector, on July 29, 2011. PRS made multiple phone calls to plaintiff between July 30, 2011, and December 30, 2011, in an attempt to recover the debt. Defendant's Statement of Undisputed Facts ("Defendant's

1

Statement") ¶¶ 1-2 [Doc. No. 14-1]. Plaintiff filed suit on June 5, 2012, alleging that while PRS tried to recover her debt it violated various provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq. See Complaint [Doc. No. 1].

The parties dispute the specifics of PRS's efforts to recover plaintiff's debt. PRS admits it called plaintiff's landline or cell phone 133 times between July 30, 2011, and December 30, 2011. PRS denies it called plaintiff after 9:00 p.m. PRS alleges it spoke with plaintiff on only seven occasions. Defendant's Statement ¶¶ 3-4; 6. Further, PRS alleges that the transcriptions of the phone calls between PRS and plaintiff indicate that on two occasions plaintiff asked the PRS collector to call back in a few days to determine if she could make a payment. Defendant's Statement ¶¶ 9-10.[1] PRS also alleges that plaintiff never sent a Cease and Desist letter, pursuant to 15 U.S.C. § 1692c(c), which would have required PRS to stop communicating with plaintiff. Memorandum of Law in

---

[1] PRS produced full transcriptions of seven phone calls between PRS and plaintiff and included excerpts of the transcriptions in its Statement of Undisputed Facts. See Defendant's Statement ¶¶ 7-13; Transcript of Conversations, Affidavit of John B. Mullahy, Ex. B [Doc. No. 14-7]. Plaintiff's response to each excerpt is "Denied in that the recording of the [date] call speaks for itself." See Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Plaintiff's Response") ¶¶ 7-13. The Court does not construe plaintiff's response as denying the conversations occurred or that the excerpts do not accurately reflect the conversations. Thus, the Court will deem the transcriptions to be an accurate statement of the parties' conversations.

Support of Professional Recovery Services, Inc.'s Motion for Summary Judgment ("Defendant's Memo") at 9 [Doc. No. 14-2].

Plaintiff alleges PRS called her more than 133 times. Plaintiff also alleges PRS called her after 9:00 p.m. on November 20, 2011, and that she spoke with a PRS collector on more than seven occasions. Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Plaintiff's Response") ¶¶ 4; 6 [Doc. No. 28-1]. Plaintiff further alleges that throughout October and November, 2011, PRS called her two to three times a day. See Bessie Turner Affidavit ("Turner Affidavit") ¶ 3, Plaintiff's Memo, Ex. A [Doc. No. 28-3]. Plaintiff alleges she told the PRS collectors she was not working and was unable to make any payments. Plaintiff alleges PRS told her the calls would continue until payments were made. Id. ¶¶ 10-11. Plaintiff also alleges the transcriptions of her calls with the PRS collectors demonstrate she did not want PRS to continue calling. Plaintiff's Memorandum of Law in Response to Defendant's Motion for Summary Judgment ("Plaintiff's Memo") at 8 [Doc. No. 28-2].

II. Jurisdiction

Because plaintiff argues that defendant violated the FDCPA the Court has federal question subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Further, the parties consented to the jurisdiction of this Court to decide

3

defendant's motion pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Doc. No. 12].

III. Legal Standard

A court should grant summary judgment when the record demonstrates that "there is no genuine issue to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the non-moving party on an issue affecting the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To determine if a material fact exists a court must view the evidence in a light most favorable to the non-moving party. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the non-moving party to identify specific facts that contradict those of the moving party. See Anderson, 477 U.S. at 256. If the non-moving party comes forward with "specific facts showing that there is a genuine issue for trial," such that a jury may return a verdict in his favor, summary judgment must be denied. Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

IV. Discussion

Congress enacted the FDCPA to combat debt collectors' use of abusive practices to collect debts. See 15 U.S.C. § 1692(e); Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000). Plaintiff's debt resulted from transactions relating to personal, family or household purposes. See Turner Affidavit ¶¶ 2-3. Further, there is no dispute that PRS is a "debt collector," as defined by § 1692a(6).[2] Consequently, the FDCPA is applicable to this matter. See Pollice, 225 F.3d at 403. Plaintiff asserts four FDCPA claims in her complaint. PRS argues summary judgment should be granted for all four claims.

A. 15 U.S.C. § 1692c(a)(1)

Count One alleges PRS violated § 1692c(a)(1) because it called plaintiff after 9:00 p.m. on November 20, 2011. See Complaint ¶¶ 23-24. In most circumstances a debt collector is prohibited from communicating with a consumer, in connection with the collection of any debt, at any unusual time or place. "A debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock [a.m.] and before 9 o'clock [p.m.]." 15 U.S.C. § 1692c(a)(1).

---

[2] A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6).

5

PRS argues summary judgment should be granted because its records indicate it never called plaintiff after 9:00 p.m. Defendant's Memo at 7. Plaintiff, however, argues summary judgment should be denied because PRS called after 9:00 p.m. on November 20, 2011. See Plaintiff's Response ¶ 4. Plaintiff relies upon her affidavit to support her contention that defendant called her after 9:00 p.m. The affidavit states "I know it was after 9:00 p.m. as I had just gotten ready for bed, and was preparing to go to sleep. I go to bed after 9:00 p.m. every night." Turner Affidavit ¶ 13. Although defendant argues its records demonstrate it never called plaintiff after 9:00 p.m., plaintiff's affidavit provides evidence to refute defendant's allegation. This is a quintessential fact question that must be resolved by a jury. The jury will have to decide whether to credit PRS's account records or plaintiff's testimony. As a result, there is a material issue of fact as to whether PRS called plaintiff after 9:00 p.m. Consequently, summary judgment is denied as to Count One.

B. 15 U.S.C. § 1692d and § 1692d(5)

Counts Two and Three of plaintiff's complaint allege PRS violated § 1692d and § 1692d(5) because it called plaintiff repeatedly, called at inconvenient times, and told plaintiff she would continue to receive calls until the debt was paid. See Complaint ¶¶ 25-28. Pursuant to § 1692d, a debt collector may

6

not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. "Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" violates § 1692d. 15 U.S.C. § 1692d(5).

PRS argues summary judgment should be granted on Counts Two and Three because its calls to plaintiff were not made with the intent to annoy, abuse, or harass. Defendant's Memo at 9. PRS also argues that making 133 phone calls in five months cannot be considered repeated or continuous. Id. Plaintiff argues summary judgment should be denied because a debt collector's intent, which may be inferred by the pattern and volume of phone calls, is a jury question. Plaintiff's Memo at 8. Plaintiff also argues there is a fact question as to the number of calls PRS made, when the calls were made, and how many times PRS actually spoke with plaintiff. Because there are genuine issues of material fact, plaintiff argues summary judgment should be denied. Id. at 9.

Courts generally allow juries to decide whether a debt collector's conduct is annoying, abusive or harassing. See Derricotte v. Pressler & Pressler, LLP, No. 10-1323, 2011 WL 2971540, at *3 (D.N.J. July 19, 2011). A court, however, may grant summary judgment if a plaintiff fails to "provide evidence

7

such that a reasonable juror could conclude that such calls were caused by Defendants with an intent to harass." Id. (quoting Bey v. Daimler Chrysler Servs. of N. Am., LLC, No. 04-6186 (RBK), 2006 WL 361385, at *10 (D.N.J. Feb. 15, 2006)). "Actual harassment or annoyance turns on the volume and pattern of calls made." Bassett v. I.C. Sys., Inc., 715 F. Supp. 2d 803, 810 (N.D. Ill. 2009) (internal citation omitted). The ultimate question is whether the debt collector's conduct had "the natural consequence . . . to harass, oppress, or abuse [the] plaintiff." Regan v. Law Offices of Edwin A. Abrahamsen & Assocs., P.C., No. 08-5923, 2009 WL 4396299, at *5 (E.D. Pa. Dec. 1, 2009).

There is no consensus as to the amount and pattern of calls necessary for a court to infer a debt collector intended to annoy, abuse, or harass a debtor. See Krapf v. Nationwide Credit Inc., No. 09–00711, 2010 WL 2025323, at *3–4 (C.D. Cal. May 21, 2010). Further, in the District of New Jersey, Derricotte is the leading case that addressed whether a genuine issue of material fact existed for a § 1692d claim involving repeated phone calls to a debtor. There, the defendant placed six calls over a ten week period before the plaintiff sent a Cease and Desist letter. The Court concluded "there was no evidence that the six phone calls were made with an intent to harass, oppress or abuse." Derricotte, 2011 WL 2971540, at *5.

Consequently, the court granted the defendant's motion for summary judgment. Id. Here, the volume and pattern of PRS's phone calls to plaintiff is substantially different than Derricotte. Therefore, the Court looks to cases from other jurisdictions for guidance.

An instructive case is Akalwadi v. Risk Mgmt. Alts., Inc., 336 F. Supp. 2d 492, 506 (D. Md. 2004). There, the debt collector called the plaintiff approximately twenty eight times over a two month period. None of the calls were made at unusual times, calls were made on a daily basis, and on one day the plaintiff was called three times. The court denied summary judgment because "[t]he reasonableness of this volume of calls and their pattern is a question of fact for the jury." Id.

Another instructive case is Majeski v. I.C. Sys., Inc., No. 08-5583, 2010 WL 145861, at *2-4 (N.D. Ill. Jan. 8, 2010). In Majeski the debt collector called the plaintiff sixty seven times in a six month period. The pattern of the calls, however, was sporadic. At times plaintiff received no calls for weeks and other times the debt collector made multiple attempts per day, "leaving messages on the Plaintiff's answering machine at approximately two to five hour intervals." Id. at *2. The court denied summary judgment because it could not conclude as a matter of law that "the volume and pattern of calls . . . shows

9

that the Defendant intended to annoy, abuse, or harass Plaintiff." Id. at *4.

Also instructive is Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1452-53 (D. Nev. 1994). There, the debt collector's phone records indicated the plaintiff hung up on the debt collector during a phone conversation at the plaintiff's workplace. The records also indicated the debt collector called plaintiff twice within five minutes after plaintiff hung up the phone. The court determined the debt collector's conduct violated § 1692d(5) as a matter of law. Id. at 1453; see also Bingham v. Collection Bureau, Inc., 505 F. Supp. 864, 873 (D.N.D. 1981) (concluding defendant harassed plaintiff when it immediately called plaintiff after plaintiff hung up). Finally, in Krapf, the court denied summary judgment in part because plaintiff's records "show that Nationwide would sometimes call twice in a matter of minutes." 2010 WL 2025323, at *4.

The Court concludes that a reasonable jury could determine that the volume and pattern of PRS's phone calls demonstrate it intended to annoy, abuse, or harass plaintiff. First, as in Majeski and Akalwadi, there was a high volume of calls made by PRS to plaintiff. Although the parties dispute the exact number of phone calls, there is no dispute that PRS called plaintiff's landline or cellular phone at least 133 times in five months. According to PRS's records, on some days plaintiff received no

phone calls from PRS, however, on other days PRS made multiple phone calls. See, e.g., PRS Records at 4, Affidavit of Scott Stearn, Ex. 1 [Doc. No. 14-4]. Further, it appears that PRS left multiple messages for plaintiff in one day. See PRS Records at 5. Second, PRS's records and the transcripts suggest that on two occasions a PRS collector called plaintiff back shortly after she hung up on PRS. The conversation on October 8, 2011, proceeded as follows:

> FEMALE VOICE: Good morning.
> CALLER: Hello. Bessie Turner please.
> FEMALE VOICE:  Who is this?
> CALLER: This is Harry Cavanero calling from Professional Recovery Services.  Is this Bessie Turner?  Bessie, you hung right up.  That wasn't polite.

Defendant's Statement ¶ 7. On November 17, 2011, the PRS records indicate that PRS called plaintiff at 11:39 a.m., and contain a note stating "unempl living off". PRS Records at 11. The transcript of the November 17, 2011, conversation reflects that plaintiff told the PRS collector she was living off her elderly parents and the conversation ended abruptly. Defendant's Statement ¶ 11. The next entry in the records indicates PRS placed a call at 11:42 a.m., within minutes of the 11:39 a.m. conversation. The jury may consider these multiple calls to plaintiff in one day when it decides whether PRS intended to annoy, abuse, or harass plaintiff. Third, PRS's records indicate PRS called plaintiff twice within a matter of

minutes on numerous occasions.[3] Fourth, on October 10, 2011, the conversation between a PRS collector and plaintiff proceeded as follows:

> CALLER: Hello, Bessie Turner please.
> MS. TURNER: Who's calling?
> CALLER: Harry Cavanero's calling. Is this Bessie Turner? I'm calling from Professional Recovery Services.
> MS. TURNER: I told the gentleman the other day that I'm not working.
> CALLER: <u>Well, we still have to call Ma'am until payment is made on the account.</u>
> MS. TURNER: Okay, well I'm not working.
> CALLER: But that's not my fault Ma'am. You must have some type of an income or how are you living?
> MS. TURNER: I'm not barely --
> CALLER: Hello?
> MS. TURNER: I'm not. I'm really not. I'm just waiting for whatever utility there is to be cut off in the next day or two.
> CALLER: Well, you have a good day Ma'am. <u>We will be calling again.</u>

Defendant's Statement ¶ 8 (emphasis added). After this conversation, PRS collectors continued to call plaintiff until December 30, 2011. See PRS Records. The jury may infer from PRS's threat to continue to call plaintiff that it intended to annoy, abuse, or harass her until she capitulated and paid the debt.

PRS cites numerous cases to support its argument that the pattern and volume of its phone calls do not demonstrate an intent to annoy, abuse, or harass plaintiff. See Defendant's

---

[3] PRS made two calls to plaintiff within minutes on the following days: August 3, 2011 at 7:55:40 p.m. and 7:55:58 p.m.; August 13, 2011 at 8:46:17 a.m. and 8:52:51 a.m.; October 13, 2011 at 8:58 a.m. and 8:59 a.m.; October 26, 2011 at 6:02 p.m. and 6:03 p.m.; November 10, 2011 two phone calls placed to two different numbers at 8:41 a.m.; November 17, 2011 at 11:39 a.m. and 11:42 a.m.; November 23, 2011 two phone calls placed to two different numbers at 11:40 a.m. See PRS Records.

Memo at 8-9. These cases, however, are all distinguishable because the alleged violation of § 1692d was only the excessive volume of phone calls. In this instance, the volume of calls combined with evidence regarding the pattern and content of the phone calls creates a jury question. Based on the evidence, a reasonable jury could conclude PRS intended to annoy, abuse, or harass plaintiff. Consequently, summary judgment is denied as to Counts Two and Three.

C. 15 U.S.C. § 1692f

Count Four alleges PRS violated § 1692f because it called plaintiff repeatedly after learning she was unemployed, called at inconvenient times, and "engaged in other unfair methods of collecting an alleged debt." See Complaint ¶¶ 29-30. The FDCPA prohibits debt collectors from using unfair or unconscionable means to collect a debt. See 15 U.S.C. § 1692f; Huertas v. Galaxy Asset Mgmt., 641 F.3d 28, 32 (3d Cir. 2011). The statute provides a non-exhaustive list of conduct that violates the statute. See 15 U.S.C. § 1692f(1)-(8). PRS did not engage in any of the enumerated violations. However, § 1692f "allows a court to sanction improper conduct the FDCPA fails to address specifically." Adams v. Law Offices of Stuckert & Yates, 926 F. Supp. 521, 528 (E.D. Pa. 1996). PRS argues summary judgment must be granted because plaintiff does not specifically point to any alleged unfair or unconscionable conduct. Defendant's Reply

13

Brief in Further Support of its Motion for Summary Judgment at 6 [Doc. No. 29].

Plaintiff argues PRS engaged in unconscionable and unfair conduct because it called plaintiff after 9:00 p.m. Plaintiff's Memo at 10. Whether PRS called plaintiff at inconvenient times is specifically addressed by § 1692c(a)(1). As a result, this alleged improper act cannot be the basis for a separate claim under § 1692f. See Adams, 926 F. Supp. at 528; see also Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006) ("Plaintiff's complaint is deficient in that it does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA."). Plaintiff also argues PRS's intent in making repeated phone calls to her despite its knowledge that she could not pay was unfair and unconscionable. Plaintiff's Memo at 10. PRS's intent in making repeated phone calls to plaintiff is specifically addressed by § 1692d and § 1692d(5). Therefore, these alleged wrongful acts also cannot be the basis of a separate claim under § 1692f. See Adams, 926 F. Supp. at 528; see also Foti, 424 F. Supp. 2d at 667. Because plaintiff does not point to any alleged unfair or unconscionable conduct not addressed by § 1692c(a)(1) or § 1692d, her claims pursuant to § 1692f are redundant. Consequently, summary judgment is granted as to Count Four.

V.   Conclusion

For all the foregoing reasons the Court grants in part and denies in part defendant's motion for summary judgment. An appropriate Order follows.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated:  July 9, 2013